UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

UNITED STATES OF AMERICA,

                Plaintiff,

    v.

RIAN TYLER STRUCKMAN,

                Defendant.

Criminal No. 05-68-HA

OPINION AND ORDER

_____

HAGGERTY, Chief Judge:

       Defendant Rian Tyler Struckman (defendant or Struckman) was indicted on February 16, 2005, for Felon in Possession of a Firearm.  On September 21, 2005, defendant filed a Motion to Suppress Evidence [16] obtained by police on December 7, 2004.  The court heard oral argument regarding the motion on April 18, 2006 and has considered the parties' submissions.  For the reasons discussed below, defendant's Motion to Suppress Evidence is DENIED.

**<u>BACKGROUND</u>**

1 -- OPINION AND ORDER

**Responding to the 911 Dispatch Call.**

On December 7, 2004, at 11:45 a.m., Portland Police Officers Mudrick, Wilson and Singh responded to a dispatch call to a residence located at 5617 SE Reedway Street Portland, Oregon, regarding a person seen climbing over a fence into a yard.  The complainant, a neighbor, described the person as a white male wearing a black leather jacket and a red backpack.  Upon arriving at the scene, officer Mudrick and Wilson went to the east side of the residence to a locked gate leading into the backyard of 5617 SE Reedway.  As officer Mudrick prepared to climb over the fence, he observed defendant Struckman, within the fenced-in yard, walk around the corner of the house towards the officers.  When officer Mudrick first observed Struckman, the subject did not have a backpack with him.

When Struckman saw the police officers, he stopped and informed them that he lived at the residence.  Struckman allowed his jacket to drop to the ground during which time officer Mudrick pointed a gun at Struckman and ordered him to stop and get on his knees.  Struckman complied, still continuing to claim that he resided at the residence.  Officer Mudrick then climbed over the fence and handcuffed the subject.  The officer noted that the subject's behavior would change sporadically from polite to hostile.  The officer also noted that defendant attempted to pull away from the officer's grip on more than one occasion.

**Search of Struckman, the Jacket and the Backpack.**

Officer Mudrick then articulated the need to search Struckman for officer safety.  During the search, officer Mudrick found an unloaded pistol magazine in Struckman's pocket.  Officer Mudrick asked Struckman whether he had a gun in the backpack, which was not with the defendant but was adjacent to a deck connected to the house.  Struckman replied, "I don't know,

2 -- OPINION AND ORDER

it's not mine."  Meanwhile, officers Singh and Wilson entered the fenced-in yard.

Aware that officer Mudrick had found a pistol magazine, officer Wilson searched Struckman's jacket and found a 3" diameter tin used for storing air rifle pellets.  Officer Wilson then left Struckman, went around the corner to locate the backpack and searched it.  Officer Wilson found a Ruger semi-automatic handgun inside the backpack.  Officer Wilson took possession of the gun, while officer Mudrick continued to search Struckman and asked him for his name and probation status.  Struckman gave his true name and stated that he was on probation.  Struckman was placed in the patrol car and a criminal history check revealed that defendant was a convicted felon on probation for burglary.  The check also confirmed that defendant lived at 5617 SE Reedway, the place where the incident took place.

**Interview by Detective Andrew at the Precinct.**

Defendant was arrested on the charge of being a Felon in Possession of a Firearm, was advised of his rights, and transported to a precinct where has was interviewed by Detective Andrew.  Detective Andrew asked the defendant about the backpack in which the firearm was found.  Defendant again disclaimed ownership of the backpack.  Subsequently, defendant admitted ownership of certain items in the backpack.  Defendant then gave consent to the detective, in the presence of officer Wilson, for a more thorough search of the backpack.  The detective found a quantity of methamphetamine (meth) in the backpack as well.  Defendant ultimately acknowledged that he had been dealing meth for several months and had acquired the firearm as payment for an "8-ball" of meth.


**DISCUSSION**


3 -- OPINION AND ORDER

Defendant moves the court to suppress all evidence obtained by the officers as a result of the warrantless stop, seizure, search and arrest of the defendant.  The three main issues before the court are whether: 1) the officers had adequate reasonable suspicion or probable cause to stop, seize and search Struckman; 2) the officers had probable cause to arrest Struckman and whether 3) the officers validly searched and seized defendant's leather jacket and red backpack. The court addresses each issue in turn.  For the following reasons, this court finds that the officers had adequate reasonable suspicion and probable cause to stop, seize, search and arrest Struckman.  Accordingly, the officers search and seizure of the red backpack containing the gun was constitutionally valid.

I.    **Reasonable Suspicion to Stop and Perform Pat Down Search.**

Law enforcement officers may conduct an investigatory detention if they have a reasonable, articulable suspicion that a person is engaged in criminal activity.  *Terry v. Ohio*, 392 U.S. 1, 21 (1968).  To justify such detention, the government must point to specific and articulable facts, together with rational inferences drawn from those facts, which reasonably suggest that criminal activity has occurred or is imminent.  *Id.*; *see also United States v. Arvizu*, 534 U.S. 266, 273-74 (2002).  Reasonable suspicion can be based on a police officer's personal observations or the officer's knowledge that a crime has been committed.  *See United States v. Lenoir*, 318 F.3d 725, 728 (7th Cir. 2003) (reasonable suspicion based on information broadcast over police radio); *see also United States v. Townsend*, 330 F.3d 438, 440 (6th Cir. 2003) (reasonable suspicion justified detention where dispatcher's knowledge is imputed to police officers).

Here, the record supports a finding of reasonable suspicion to both stop and perform the

pat down search of Struckman.  Officer Mudrick  had a reasonable suspicion of criminal activity

based on the 911 dispatch call as well as his initial observations of the defendant prior to the pat

down search.  Specifically, the 911 call corroborated the description, dress, and location of

Struckman.  The officer's initial impressions of Struckman's behavior further established

reasonable suspicion for the officers to detain and perform a pat down search of the defendant.

Officer Mudrick testified that Struckman dropped his coat when spotting the officers, cursed and

exhibited erratic behavior changes during the encounter.  Officer Mudrick further testified that,

based on his police experience, Struckman's erratic behavior suggested that he could have been

under the influence of methamphetamine and a danger to the officers.  These circumstances

sufficiently established reasonable suspicion for the officers to stop and perform a pat down

search of the defendant in order to maintain officer safety.[1]

## II.    __Probable Cause to Arrest Struckman.__

Probable cause to conduct a warrantless arrest exists when police officers have, at the

moment of arrest, knowledge of facts and circumstances grounded in reasonably trustworthy

information and sufficient in themselves to warrant a belief by a prudent person that an offense

has been or is being committed by the person arrested.  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).

The probable cause analysis is two-fold, involving an initial determination of the "historical

facts," and then a decision as to "whether [the] historical facts, viewed from the standpoint of an

objectively reasonable police officer," constitute probable cause.  *Ornelas v. United States*, 517

---

[1] The court notes that the circumstances surrounding the stop and protective search of
Struckman support a finding of both reasonable suspicion and probable cause.  Therefore, the
handgun magazine obtained during the protective pat down search was validly seized.  *See
Minnesota v. Dickerson*, 508 U.S. 366, 375-376 (1993); *New York v. Belton*, 453 U.S. 454, 461
(1981).

U.S. 690, 696 (1996).  Supporting facts may be based upon information from a reliable, known informant or information from an independent source that can be independently corroborated. *Illinois v. Gates*, 462 U.S. 213, 242 (1983).  Officers' personal observations may also provide the basis for facts supporting probable cause.  *Pennsylvania v. Labron*, 518 U.S. 938, 940 (1996).

The record in the instant case supports a finding of probable cause.  The officers had a clear, unambiguous report from a citizen 911 caller of a suspect climbing a residential fence and a "break-in" at a known address where the lawful occupants were not at home.  Moreover, the caller clearly identified herself.  Once at the scene, the officers noticed a locked fence and witnessed the defendant walk around the corner of the exterior of the house in question.  The officers also testified that they noticed that the defendant had a surprised look on his face when he saw the uniformed officers.

Furthermore, the defendant's immediate response was to take off his leather jacket and let it fall to the ground, which the officers perceived as a potential threat of violence.  These facts culminate to support the argument that officer Mudrick had probable cause to suspect that Struckman was committing some crime against the residence in question.  Accordingly, the officers' ultimate arrest of the defendant was valid.

**III.    Seizure of the Red Backpack.**

Defendant argues that the red backpack was not within his reach when he was arrested. Moreover, the defendant contends that the backpack was located within the fenced-in area of the defendant's backyard and that, as a result, the search and seizure of the backpack, without a warrant, required probable cause and exigent circumstances in order to be valid under an exception to the Fourth Amendment.  This court finds the defendant's arguments unavailing

given the facts of this case.

Here, the officers were legally present in the yard of defendant's property because they were responding to a 911 call of a potential burglary in progress. The 911 call to which the officers responded created the exigent circumstances which justified the officers' presence on the periphery of the residence in question. *See Warden v. Hayden*, 387 U.S. 294, 298-99 (1967) (holding that a warrantless search into a home where exigent circumstances exist is not invalid under the Fourth Amendment).

Moreover, defendants are afforded the protections of the Fourth Amendment where they can establish a reasonable expectation of privacy in the item seized. *Minnesota v. Carter*, 525 U.S. 83, 88 (1988). However, "warrantless searches and seizures of abandoned property do not violate the Fourth Amendment" and individuals "who voluntarily abandon property lack standing to complain of its search or seizure." *United States v. Nordling*, 804 F.2d 1466, 1469 (9th Cir. 1986). Abandonment is a question of intent and focuses on whether an individual, "through words, acts, or other objective indications," has relinquished a reasonable privacy expectation in the property at the time of the search and seizure. 804 F.2d at 1469. This determination is based upon the totality of the circumstances and two crucial factors are: 1) denial of ownership and 2) physical relinquishment of property. *Id.*

The search and seizure of the backpack that resulted in the seizure of the gun was valid because the defendant had abandoned the property by denying ownership of the pack and physically relinquishing control of the pack. Specifically, when asked by Officer Mudrick whether there was a gun in the backpack after the officer had discovered the handgun magazine, the defendant answered, "I don't know. It's not mine." Moreover, defendant denied ownership

of the backpack a second time when being questioned by Detective Andrew subsequent to his

arrest.  Under *Nordling,* Struckman's actions constituted abandonment of the backpack.

Consequently, the officers were free to search the backpack and its contents.

## **CONCLUSION**

For the foregoing reasons, the defendant's Motion to Suppress Evidence [16] is DENIED.


IT IS SO ORDERED.

Dated this  _3_  day of May 2006.

_  /s/Ancer L.Haggerty_____

ANCER L. HAGGERTY
United States District Judge